Our next case for argument this morning is Allman v. Smith. Mr. Robertholt. Good morning, Your Honors. The district court's error in this case, where it denied summary judgment, stemmed from its failure to recognize the significant change in law resulting from this court's 2005 decision in Riley v. Blagojevich. In Riley, this court expressly directed courts to focus on reliable job descriptions with the goal of having more cases decided as a matter of law rather than going and have them resolved by juries. The district court, in contrast to Riley, specifically stated that generally the question of whether a position is exempted from the First Amendment patronage dismissal ban is a factual one that should ordinarily be left to a jury, and in support of that position, the district court cited Pleva v. Norquist. The district court's default position of sending this case to the jury was wrong. That's because the district court- I have some difficulty seeing that as the district court's default position. Of all the plaintiffs, the mayor received qualified immunity on all but two, right? That's correct. The default position seemed to have been qualified immunity, and I think you're well advised to discuss the particulars of the two cases in which the district court denied the mayor's request for qualified immunity. And as to those particular cases, with regard to Ms. Allman, Ms. Allman was the office manager. Ms. Allman was a clerk, a cashier, sorry, who the mayor then promoted to office manager and fired. I'm just imagining how this would play out in Chicago. The mayor wants to fire garbage collectors. The mayor promotes the first garbage collector to be the manager of O'Hare Airport and fires him. Then he promotes the second garbage collector to be the manager of O'Hare Airport and fires him, and so on. Why is this case any different? This case is different because of the specific facts and the timeline of how this happened. That's why I asked you to talk about the specific facts. In this case, Ms. Allman for many years served as the office manager, where she held several policy meetings. It is clear that had she still been the office manager, she could have been fired, but she was a cashier. It sounds like what you want is for us to make a decision about local civil service rules rather than about the scope of immunity under the Constitution. That's not the function of interlocutory review. Local civil service rules are what they are. A question about them has been decided adversely to the mayor. I don't see how we can review that on an interlocutory appeal. In this case, Ms. Allman, after the election, on December 19th, after she learned that she was going to lose her position as the office manager, applied for... Look, you haven't listened to what I said. This is an interlocutory appeal based on a claim of absolute immunity. The question that has now been raised is one of local civil service law. I ask how that could be within our appellate jurisdiction. I don't see this as being a question of local civil service law. The question... Unless you prevail on a question of local civil service law, this appeal is dead in the water. It is the first and perhaps the last question. How can that be within appellate jurisdiction under Mitchell? Because the question before the court is whether Ms. Allman could be removed from her position as a cashier when she burrowed into a civil service job after the election. This court... Excuse me, Mr. Overholt, but doesn't your theory, though, depend upon that demotion having been improper in some way? Yes. Okay. Yes. And doesn't that implicate, as Judge Easterbrook is indicating, in essence, local personnel rules? I don't think so, because recall what Riley is designed in part to do. Riley was decided in part to provide elected officials with the opportunity and the guidance about the sorts of personnel decisions they are permitted to make. What I am suggesting in this case, Your Honor, is that there is a lack of decision from this court about whether, in this sort of circumstance, it is permissible to remove an employee who burrows. Has any court actually held that this is permissible? Judge Tinder's decision in Turner that you rely upon is pretty easy to distinguish on its facts. Has anybody else said that you can't burrow? Well, there is Rutan and there is McConnick, both of which stand for the proposition that any sort of politically motivated job action is impermissible. Then that would require us to get into Ms. Ullman's head to decide the question of qualified immunity, right? No, not based upon the test that we are proposing. Again, what we are proposing here is a test for elected officials that says, in the event that an employee who occupies a policymaking position takes a voluntary demotion with a cut in pay after they learn that they are going to be eliminated from their position. In that circumstance, an elected official should be permitted to take that employee and terminate them from the position that they held before they burrowed. How does that apply? Okay. You know an awful lot about Indiana local employment law, public employment law. How does that apply, for example, with police chiefs and fire chiefs are always promoted up to those politically appointed positions for merit posts and then when the administration changes they typically will go back to whatever they were before, lieutenant or major or sergeant, whatever it might be. Should we apply a similar sort of presumption in those cases? No, because the difference between this case and police and fire positions is there is a specific state statutory scheme that requires them to be placed back into their permanent assignment or their permanent rank. Why doesn't this case pose, in essence, the same question under Anderson's local personnel practices and policies? It's entirely proper for a police chief to burrow, as you would put it. Yes. The statute authorizes it. Yes. Isn't this also controlled, in essence, by Anderson's policies and laws? Not that I'm aware of. I'm not aware of any policy that permits. Was there anything that prohibited Ms. Ullman from doing what she did? No. No, there was not. However, as I tried to point out in a brief, the notion that somehow this was not a political action by her, given that she was the person who made the hiring and firing decisions for her department, is inappropriate to say the least. Do we have the paperwork in the record? Do we know who signed off on that? I do not. Did she get anybody else's approval? I do not know that. Okay. As to Ms. Blogger, Ms. Blogger's situation is, in some ways, given her job description, similar to Ms. Ullman. She occupied a position where she had significant authority. She was able to direct personnel. She had to serve as the assistant manager, in the absence of the manager and assistant manager. She had to direct personnel, had the power to investigate and resolve complaints, just like Selch versus Letts. And she had to serve as a departmental liaison with other city departments. Under those circumstances, as a matter of First Amendment law, Ms. Blogger was not protected by the First Amendment. And again, I believe that the district court's lack of sufficient reliance on the written job descriptions was error. In terms of qualified immunity, Ms. Blogger was, again, a mid-level manager. She had significant policymaking responsibilities. Can I ask, did she supervise other managers? She supervised other employees. I do not know that she supervised other managers. So how would she be different, let's say, from, you make a big deal out of the fact that she's not a member of the union. She couldn't be. She's got supervisory responsibilities. The same could be said of a person who's managing a road repair crew in the Department of Transportation, right? First-line supervisor. Yes, but she was more than a first-line supervisor of a road crew because of her other obligations. Okay. So it's not rank in the hierarchy. Not alone. Although, for qualified immunity purposes, I mean, recall what the Supreme Court often says about qualified immunity. Qualified immunity protects all but the plainly incompetent for violating clearly established law. As this court has recognized in Riley and its other First Amendment cases, the law in this area is very difficult, it is very complicated, and it is very difficult to predict. Well, there's a big gray area. Yes. But the question is whether Barr was even in that gray area. And my contention would be this on qualified immunity for both of them. Both were upper-level managers, mid-level managers, who had significant supervisory responsibilities. This blogger, for example, had to fill in and become essentially the manager when the other manager was absent and had specifically had to have the ability to direct all department activities. That's in her job description. She was responsible and had to have the ability to direct all department activities. In that circumstance, she's no different than Ms. Allman. And I don't see how a mayor in a 60-day window after an election can, based on that statement, determine that, in fact, she's protected by the First Amendment. If he made an error, it was certainly a reasonable one. Again, as to Ms. Allman, because we have cases such as Peconick and Rutan, and we have no specific authority from this court or any other saying that that sort of practice of removing someone, like he did, is improper, I don't see how he can't get qualified immunity. Well, that raises a really interesting problem under qualified immunity law. Because you agree, if I understand it correctly, that politically motivated firing of a cashier is a clearly established violation of the First Amendment. I agree. Yes. And the idea seems to be that if I dream up a new defense tactic that nobody has rejected yet, then I'm entitled to qualified immunity. Is that the way that works? I wouldn't describe it in that way. Again, I would describe it as we have cases from the Supreme Court that say politically motivated job actions are impermissible. Ms. Allman, from the perspective of Mayor Smith, took advantage of the fact that she was notified she was going to be fired, left her position days before he was going to take office, and burrowed into a civil service position. And as I tried to explain in the reply brief, there are a variety of public policy concerns that are created when employees attempt to burrow. Under those circumstances, given the lack of direction from this court, the Supreme Court, and other circuits, it was not improper, or put in qualified immunity terms, Mayor Smith really did. Unless the court has other questions, I'm going to reserve my remaining time for rebuttal. Certainly, counsel. Mr. Mason. Good morning. Good morning. I think, and I think where we were at the end of the court's question, Mr. Overholt, these are two separate cases, even though they're both plaintiffs. It's undisputed at this point that Ms. Allman was terminated from the cashier position. The question is whether the propriety of that, or the question is the propriety of that. And that depends on an analysis separate from Riley, and that depends on, I think the case that the mayor was relying on in the district court was the Southern District Indianist opinion in Turner. And the court's raised the problem with that. For Margaret Bowker, the case, I think, is squarely within Riley, and in fact, the plaintiffs litigated this under Riley. If you look at, after Riley, cases that have come out, plaintiffs' attorneys haven't caught on to the fact that you've got to squarely address the job description. So you see a lot of cases, including a case against the city of Anderson, also decided by the district court, which we were not involved in. The plaintiff's attorney was relying quite a bit on proving that the job description didn't fully account for the duties of the work. That's not what we're trying to do. Riley says that that's what you can't do unless you can prove that there's some sort of systemic unreliability with the job description. For Margaret Bowker, what we're saying is when the mayor looked at the job description, he was on notice that this employee was protected by the First Amendment from being subject to political activity. And we listed a variety of reasons in our brief. But the purpose of this argument, I think the main point I want to convey is you can't just pick and choose different portions of the job description and match them up with language in the Seventh Circuit cases. Because as this Court's noted repeatedly, you can find two jobs where one court has essentially the same job, and one court has found that it is protected by the First Amendment and another has found that it hasn't. Our point is you've got to read the whole job description. And the key point of the job description for us is under this Section 2. And this is at the appendix on page 49. And that is the responsibility of the position. And really that's the question. The question is what is the responsibility of the customer service supervisor? Does the mayor need somebody who is a political loyalist of his in order to run or perform the position of customer service supervisor? And the responsibility defines it as the incumbent is responsible for assisting in office operations in accordance with the mission, objectives, directives, and policies of the utility office. As Mr. Overholt noted, the incumbent serves as the assistant manager in the manager and assistant manager's absence. The incumbent performs a variety of non-standardized tasks according to established policies and practices of the department. And then it explains how the customer service supervisor should exercise her discretion. She exercises personal initiative and decision-making authority in resolving customer complaints and directing personnel. Then just the second one. Errors in decisions or accuracy of work are generally prevented through procedural safeguards and are detected through supervisory review. Undetected errors may lead to loss of time within the department and or inconvenience to coworkers and or customers. Incumbent's work is reviewed during critical phases and upon completion for accuracy and in conformance with department policies. If you look at the responsibility provision of the job description in connection with the duties it lists, which absolutely we do not deny, involve interacting with the public. But it indicates that the interactions and discretion that the customer service supervisor exercises are in conformance with established policies and it does not give her the authority to set those policies. We made the argument in the district court, and as the mayor's pointed out, the district court didn't fully buy. But when the job is categorized as exempt, or I'm sorry, non-exempt under FLSA, and if you look at the job category, which is a computer office machine operation technician, if you look at that, that indicates there's not the discretion necessary to be a political actor. And the question in this case is when Mayor Smith looked at, assuming he did, but for purposes of the qualified immunity analysis, when Mayor Smith looked at the job description under clearly established law, could he have decided that this is a person who I need, this is a position where I need a political loyalist. And the job description indicates that this person does not have the sufficient discretion in order to be replaced by a political loyalist. Mr. Macy, as you know, this is a difficult area of the law. It has pretty wide gray areas. And there's a risk of cherry picking in this process, but I'm going to go ahead and take that chance a little bit. In trying to understand what the Supreme Court has been trying to teach us since Elrod so many years ago, I guess it seems to me that one way of understanding this may be to say, is this a person who could mess up the administration's policies, reputation, et cetera, without such sabotage in essence coming immediately to light by supervisors? You can always fire somebody for cause, right, if they're not performing. And so I was interested in, and this is Ms. Bower's job description in this responsibility section, the point that errors in decisions or accuracy of work are generally prevented through procedural safeguards and are detected through supervisory review. That seems to me to cut pretty strongly in her favor, whereas, and I don't know if we have many others in the record, or if we have to dig back into the district court record, but I would assume that we would see others where, in essence, a lot more discretion is delegated to somebody, where it would be harder for an administration to say, no, this person is not doing her job correctly and is sabotaging us. I'm not sure if that's a question, but it's an observation. I'll invite comment. Yes, without, because we still have the nine of them going below, but without jeopardizing the cases, I think the analysis the district court performed was nine of these people are high enough up where there's at least a legitimate question. And she did, Riley itself says that in some cases, the job descriptions aren't going to be enough. And in some of these cases, she found in some other cases, the defendant didn't offer the correct job description that these people were working under. So there was a question of how they could have relied on a job description that they got wrong. They didn't know what position they were working in. These two, and I think this is why we're here on qualified immunity, is there's been a sense that the pushing has all come, I think, has generally come against employees being protected, at least for purposes of qualified immunity. I think the district court, and this would be our argument, these two employees, one is a cashier who's absolutely, as they've conceded. But the customer service supervisor was so low, and we put it at the bottom rung, that under any analysis, and I think part of that is to do with their supervisory authority, which is very limited. Under any analysis, the mayor knew, or the evidence, the clarity of the job description should indicate the mayor knew that he was taking an improper action when he terminated her. So I don't know. That probably didn't answer your question at all. You did allude to something else I wanted to just double check with both counsel about, and that is the status of the other claims. Is everything state in the district court? Everything is state. The other nine all have custom and policy claims and injunctive, or other injunctive claims? No, they just have the damages claims against the city. Okay. But not the mayor. Okay. The mayor won on the qualified immunity basis. So then I want to ask you a hypothetical, just I think I know what your answer would be, but could an outgoing mayor's chief of staff bid and get a new ministerial position with the result that the new mayor would have to keep that former chief of staff in the new administration? It's a factual question. And my answer is maybe it depends on the position. For instance, if the mayor's chief of staff wanted to go work, for instance, let's say in the water department doing the water pollution control as a line worker out there. Okay. If the mayor's chief of staff knew he was losing his job, bid on the job in accordance with the applicable procedures of the city, was awarded the job through the regular processes of the city, then I think that is permissible. The right to terminate an employee comes from the mayor's ability to put people in place in positions that aren't going to sabotage, like Judge Hamilton said, sabotage the mayor's priorities. Positions where he needs his partisans to have discretion in acting in accordance with their partisan beliefs. Once somebody is out of that position, they're not going to sabotage the employer in the city. Then I think the mayor's interest terminates. Now Turner investigated the question whether when the move itself is improper, can the incoming mayor rectify that? Maybe. But again, that's a factual dispute and that's not properly the subject. Resolving it right now, we don't have the record to say that. In fact, the record indicates the opposite, that she did properly apply for the position which had been previously posted. I'd note, one thing I wanted to point out is in the Branty case, and when reading these cases, you see that most of these people are vastly more discretion than our plaintiffs here. In Branty, you had public defenders, I think, or attorneys. And in that case, the court said, look, the incoming administration or the incoming official has the ability to terminate these people for cause at any time. If somebody's sabotaging you, if somebody is malingering, if somebody is acting contrary to the duties of their position, you can always terminate them. But the political official who's making the political termination is not allowed to assume in a position that doesn't require policymaking authority that the person who's in the position, the political opponent in the position, is necessarily going to sabotage them. And especially in positions, cities operate all kinds of public-facing positions. Judge Hamilton mentioned police and firefighters, but in cities where the parking meters aren't privatized, but other cities where you have employees who are out on the street, they have a lot of discretion that there's no plow drivers. If you do something wrong that affects the mayor, but that doesn't mean that the person necessarily has policymaking authority. If somebody's improperly plowing the street, somebody's asleep on the job, if somebody takes out somebody's car, the mayor's going to hear about it. But at the same time, that doesn't mean that the mayor's allowed to terminate all opponent snowplow drivers on the theory that they may end up improperly performing their jobs when the mayor takes office. So doesn't that take us back to the question, in essence, how do you detect when somebody is not doing their job correctly? Right, and I think the question is, there's a line about discretions are channeled through professional rather than political norms. If somebody is violating their professional duties, that's a separate question than those violating political duties. And you've agreed in this case, Mr. Macy, that if Allman had stayed in her office manager position, that's high enough that she could have been fired. Yeah, we did not dispute that for the purpose of where we are. Or in the case at all, correct? Well, at all on summary judgment, yes. I guess that's true. Are there any further questions? Thanks very much. Thank you, Mr. Macy. Anything further, Mr. Overholt? At the beginning of his presentation, Mr. Macy indicated that an employer can't pick or choose portions of job descriptions but must look at the job description as a whole. That cannot be right. What the law requires is that the job description be reviewed, it be analyzed to see if there are policymaking components to it. You don't have to look at it as a whole. You have to look at the description if it's reliable, if it's accurate, which in this case is uncontested. And you look at those individual duties and you compare them to the cases decided by this circuit. Ms. Fogger was an employee who could be removed from her position despite the First Amendment because of four things that are right in her job description. Those four items are these. She must have the ability to direct all department activities. She has the obligation to direct personnel. Is that the whole utility department or the customer service department? I believe that is the entire utility department. How does that fit in with her filling in as assistant manager in the absence of both the manager and assistant? Because that's the office manager, right? Right. The assistant manager would oversee the entire department. It's not as though she can supervise the utility department as a whole? Or am I misunderstanding that? As I understand it, if she were to step into the role of assistant manager she would have to oversee the entire utilities department. So she becomes in essence the local commissioner on an acting basis? Yes. I think that's what the job description says. Okay. In addition to that she has the power to investigate and resolve customer complaints. We know from Selch versus Letts that that is exactly the sort of function that takes her outside the protections of the First Amendment. Selch says that. Selch says that to this day. She also serves as a liaison to other departments. This court has said repeatedly, those kinds of roles where you reach out as a liaison and a responsible, as a representative for your department to other agencies is a sort of policymaking responsibility that takes you outside the protections of the First Amendment. Under these circumstances, at a minimum Mayor Smith has to have qualified immunity given those responsibilities. I also put it to you that I believe the district court was incorrect in saying that the First Amendment may apply to her or at least requires a jury to decide it. I think that's wrong. Those specific duties indicate exactly the opposite. Unless the court has other questions, that's all I have. Thank you very much. The case is taken under advisement.